UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ZENAIDA MALVEDA,

　　　　　Plaintiff,

　　v.

EXPERIAN INFORMATION
SOLUTIONS, INC., et al.,

　　　　　Defendants.

Case No. 21-cv-07244-RS

**ORDER GRANTING MOTION TO
COMPEL ARBITRATION**

## I. INTRODUCTION

Plaintiff Zenaida Malveda filed this lawsuit in September 2021, naming five defendants and averring violations of federal and state credit reporting laws. Dkt. 1. One of the defendants, Oportun, Inc. ("Oportun") brought a motion to compel arbitration, pointing to a 2018 loan agreement (the "Loan Agreement") between Malveda and Oportun containing an arbitration clause. Dkt. 39. Malveda argues that a later settlement agreement between Malveda and Oportun (the "Settlement Agreement") rendered the arbitration clause in the Loan Agreement inoperative. Malveda has failed to show, however, that the Settlement Agreement was intended to supersede completely the Loan Agreement, and thus terms present in the Loan Agreement but left unaddressed in the Settlement Agreement, such as the arbitration clause, remain in effect. Further, the arbitration clause in the Loan Agreement covers this dispute, as it leaves the question of arbitrability to the arbitrator. The motion to compel arbitration is therefore granted, and all claims against Oportun are stayed pending resolution of arbitration.

United States District Court
Northern District of California

## II. BACKGROUND

Oportun is a financial lender that provides loans to consumers. Malveda and Oportun entered into the Loan Agreement on July 9, 2018. The Loan Agreement contained an arbitration clause, which included the following language:

> All Claims between you and us, and against our agents and representatives, that arise from or relate to the Loan must, if you or we choose, be resolved by arbitration and not in court . . . The term "Claim" means all claims or disputes of a legal nature, such as a breach of this Note or violation of law, which could have been brought in court. These include, for example, Claims about your loan application and the marketing, collection or servicing of your loan.

Dkt. 30-3, pg. 10. The arbitration clause also stated "[t]he arbitrator will interpret this Arbitration Clause . . . and decide the Claim, as well as whether the Claim can be arbitrated" and that the clause "will continue to be in effect even after this Note is paid off or terminates." *Id.* at 10-11.

Some time after entering into the Loan Agreement, Malveda ceased making payments on the loan and began receiving debt collection phone calls from Oportun. In April 2019, Oportun and Malveda entered into the Settlement Agreement to resolve her claims, which included bringing her balance with Oportun to $0.00. The Settlement Agreement contained the following language: "[t]his Agreement contains the entire agreement of the parties hereto. There are no agreements, representations or understandings between the parties hereto relating to the matters and releases referred to in this Agreement other than as set forth in this Agreement." Settlement Agreement, Dkt. 40 at pg. 5. The Settlement Agreement did not contain an arbitration provision.

In July 2021, Malveda pulled her credit report from Trans Union, and saw that her Oportun account was listed with the status "Charged Off" and showed a past due balance of $4,675.00. Complaint, Dkt. 1 ¶¶ 19, 22. Plaintiff avers that Oportun furnished inaccurate information to credit reporting agencies in violation of the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785.25. *Id.* at ¶¶ 86-89. Oportun moved to compel arbitration, arguing that Malveda must arbitrate her claims pursuant to the arbitration clause in the Loan Agreement.

### III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") "provides that any arbitration agreement within its scope 'shall be valid, irrevocable, and enforceable,'" and "permits a party 'aggrieved by the alleged . . . refusal of another to arbitrate' to petition any federal district court for an order compelling arbitration in the manner provided for in the agreement." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting 9 U.S.C. § 4) (omission in original). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

Under the FAA, this Court's role is limited "to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130. "[G]eneral state-law principles of contract interpretation" are applied to determine whether an agreement to arbitrate exists. *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 743 (9th Cir. 2014) (citing *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009)). If there is a valid arbitration agreement, the FAA directs that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24-25 (1983) (discussing the FAA). The presumption in favor of arbitration, though, is not applied to the question of whether an arbitration agreement exists. *See Goldman, Sachs & Co.*, 747 F.3d at 742.

### IV. DISCUSSION

To prevail in its motion, Oportun must show that the claim at issue is encompassed by the arbitration clause, and that the arbitration clause is still in effect. These two questions are addressed separately.

#### A. Whether a valid agreement to arbitrate exists

Malveda does not dispute that the Loan Agreement, and the Arbitration Clause included in the Loan Agreement, was a valid contract at the time she entered into the Loan Agreement. Thus,

1    in this case, "whether a valid agreement to arbitrate exists," *Chiron Corp.*, 207 F.3d at 1130,

2    depends on whether the Settlement Agreement superseded the Loan Agreement.

3         Malveda argues the Settlement Agreement completely superseded the Loan Agreement,

4    including the Arbitration Clause contained within the Loan Agreement, and thus was a novation.

5    "Essential to a novation is that it 'clearly appear' that the parties intended to extinguish rather than

6    merely modify the original agreement." *Howard v. Cnty. of Amador*, 220 Cal. App. 3d 962, 977

7    (1990). Malveda argues that an integration clause in the Settlement Agreement establishes a

8    novation. This clause reads as follows:

9

10        This Agreement contains the entire agreement of the parties hereto. There are no
          agreements, representations or understandings between the parties hereto relating to the

11        matters and releases referred to in this Agreement other than as set forth in this Agreement.
          In connection with the execution of this Agreement and the making of the settlement

12        provided for herein, no party to this Agreement has relied upon any statement,
          representation or promise of any other party not expressly contained herein.

13

14   Dkt. 40 at pg. 5. Oportun argues this integration clause was designed to limit the use of extrinsic

15   evidence to alter the terms of the agreement, rather than supersede all terms of the Loan

16   Agreement, and this reading of the clause prevails.[1] Indeed, the cases Malveda relies upon to

17   support her argument involved contracts with explicit language indicating intent to supersede prior

18   contracts, unlike the clause at issue here. *See Riley Mfg. Co., Inc. v. Anchor Glass Container

19   Corp.*, 157 F.3d 775, 778 (10th Cir. 1998) (noting that the "merger clause" at issue stated that it

20   "supersedes any and all prior representations and agreements relating to the subject matter

21   thereof"); *Ingram Micro Inc. v. Signeo Int'l, Ltd.*, 2014 U.S. Dist. LEXIS 101660 at *4, fn. 2 (C.D.

22

23   _____

24   [1] California Code of Civil Procedure § 1856 provides that "terms set forth in a writing intended by
     the parties as a final expression of their agreement with respect to the terms included therein may

25   not be contradicted by evidence of a prior agreement or of a contemporaneous oral agreement."
     This rule is also known as the parol evidence rule. "When the parties to a written contract have

26   agreed to it as an 'integration' - a complete and final embodiment of the terms of an agreement -
     parol evidence cannot be used to add to or vary its terms." *Masterson v. Sine*, 68 Cal.2d 222, 225

27   (1968).

28

United States District Court
Northern District of California

Cal. July 22, 2014) (explaining that the merger clause expressly released all claims arising under the two earlier agreements); *Grey v. American Management Services*, 204 Cal.App.4th 803, 807 (2012) (noting the contract states it "supersedes all prior and contemporaneous discussions and understandings" concerning the employee's employment at the company).

Here, it does not "clearly appear that the parties intended to extinguish rather than merely modify the original agreement." *Howard*, 220 Cal. App. 3d at 977 (quotation marks omitted). Instead, the clause Malveda relies on is better read as a clause excluding the use of extrinsic evidence in interpreting the contract. Although the Settlement Agreement expressly modified certain conditions of the Loan Agreement, such as Malveda's obligation to repay the loan, the Settlement Agreement did not expressly supersede the entire Loan Agreement or modify every term in the Loan Agreement. Indeed, as Malveda herself notes, the Settlement Agreement "makes no mention of the original Loan agreement" and "does not reference the original Loan agreement in any manner[.]" Plaintiff's Memorandum in Opposition, Dkt. 32 at pg. 10. To the extent Malveda argues the Loan Agreement is no longer in effect because the parties do not owe each other performance under the contract, the Arbitration Clause in the Loan Agreement indicates that it "will continue to be in effect even after this Note is paid off or terminates," Dkt. 30-3 at pg. 10-11. Further, "[a]n arbitration clause can still bind the parties, even if the parties fully performed the contract years ago." *Optimum Prods. v. Home Box Off.*, 839 F. App'x 75, 77 (9th Cir. 2020) (citing *Nolde Bros. v. Local No. 358, Bakery & Confectionary Workers Union*, 430 U.S. 243, 252 (1977)). In sum, a valid agreement to arbitrate still exists.

**B. Whether the agreement encompasses the dispute at issue**

Determining "whether the agreement encompasses the dispute at issue," *Chiron Corp.*, 207 F.3d at 1130, depends on whether Plaintiff's claims arise out of or relate to the Loan Agreement. The Ninth Circuit has held "the language 'arising in connection with' reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). "To require arbitration, [Malveda]'s factual allegations need only 'touch matters' covered by the

United States District Court
Northern District of California

United States District Court
Northern District of California

contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability." *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624, n.13 (1985)). Here, the Arbitration Clause includes language similar to *Simula*, and included all claims "that arise from or relate to the Loan."[2]

The question of whether Malveda's claim arises from or relates to the Loan need not even be reached, though, because the parties have agreed to arbitrate questions of arbitrability. The Arbitration Clause included the following language: "[t]he arbitrator will interpret this Arbitration Clause . . . and decide the Claim, as well as whether the Claim can be arbitrated." Dkt. 30-3 at pg. 10. "[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). The parties agreed to arbitrate the gateway question of whether a claim can be arbitrated. Thus, it is not for this Court to determine the question of arbitrability, given that as discussed before, there is a valid arbitration clause and the Loan Agreement was not expressly superseded by the later Settlement Agreement.

## V. CONCLUSION

For all the foregoing reasons, the motion to compel arbitration is granted. All claims against Oportun are stayed pending resolution of Malveda's claims in arbitration.

**IT IS SO ORDERED**.

Dated: January 10, 2022

---

[2] Malveda argues that her claims arise from the Settlement Agreement, rather than the Loan Agreement. Her claims indeed appear related to the content of the Settlement Agreement, but also appear related to the Loan Agreement, since both agreements concerned the information Oportun (perhaps falsely) reported to TransUnion: the money Malveda did or did not owe to Oportun. That the claims are also related to the Settlement Agreement does not extinguish their relationship to the Loan Agreement, or the applicability of the Loan Agreement's arbitration clause.

RICHARD SEEBORG
Chief United States District Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California